THE STATE, ALBERT J. AMERMAN, PROSECUTOR, v. GARRETT BRIGGS ET AL., RESPONDENTS.

1. Proceedings once taken by justices of the peace and surveyors of the highways, relating to encroachments upon a public road, are, until set aside, a bar to subsequent investigation before a like statutory tribunal touching the same encroachment.

2. In taking these proceedings, the justices and surveyors cannot depart from the line of the old road, and, instead of removing encroachments, practically lay out a new road on other lands.

3. The statute does not confer upon the justices and surveyors the right to take lands in the alteration or laying of roads. Lands for such purpose can only be taken by the public upon compensation made to the owner.

On *certiorari.*   In matter of road.

Argued at June Term, 1887, before Justice KNAPP.

For the prosecutor, *Gaston & Bergen.*

For the respondents, *H. F. Galpin.*

KNAPP, J.   This writ brings up the proceedings and written determination of justices of the peace and surveyors of the highways, made December 1st, 1886, in respect to encroachments on a public road laid out in the township of Bedminster, in the county of Somerset.

The first reason assigned for setting aside the proceedings is that when said determination was made there was in full force a determination relating to the same alleged encroachments on the same public road, previously made by a like tribunal, under which the overseer had partially acted, and boundary lines set were by adjoining owners; the second determination being entirely different as to the place and extent of encroachments from the first.

The other reasons allege that, in fact, the justices and surveyors departed from the line of the old road, and, instead of removing encroachments, practically laid out a new road on other lands.

The case shows the facts to exist upon which the first reason assigned is predicated, for, by a return made on the day of June, 1885, by two surveyors of the highways and two justices, regularly called for that purpose, it appears that the same road was examined for encroachments, and in their report such encroachments were determined.   Under it, some of the adjoining land-owners adjusted their fences to comply with that determination, and no proceedings have been insti-

tuted by any one to reverse it or set it aside. It is conceded that no new encroachments had followed the former adjudication, when the one under review was made.

The question presented is whether this statutory proceeding, once begun and carried to completion, and standing unreversed, is a bar to subsequent action of like character touching the same encroachment.

It is a general principle that the decision of a tribunal of competent jurisdiction is binding and conclusive upon all other tribunals of concurrent power. If there be identity in the subject or thing litigated in the ground or cause of action, identity of persons or parties to the controversy, of the quality or rights in which they litigate, a judgment or decision is, until unreversed, conclusive.

Is there to be ascribed to this proceeding the nature and quality of judicial action?

Those officers who constitute the body when it is called into being, discharge their general duties under the sanction of official oaths. Persons to be affected by the action of this body, in a proceeding of this character, must be brought before it by notice. *Van Tilburgh* v. *Shann*, 4 *Zab.* 740. They, as a board, are to examine into and decide on the fact of encroachment, of the persons who were guilty of it, and its extent. Their decision reduced to writing and signed by them, defining the limits of encroachment as they have determined it to be, is, until set aside or reversed, conclusive in determining the private right, so far as the provision in the law has binding force, and becomes an authoritative direction to the overseer of the highways, acting for the public, to throw down and remove enclosures, to the extent which shall have been determined by them, and their determination of the public and private right is not declared in the act to be merely a temporary and provisional arrangement, but stands without any prescribed limit to its duration.

There would seem to be no great room for doubt that the exercise of such power is marked by all the essential qualities of judicial action.

As the case now stands, there exists two determinations on the same subject matter, each apparently of equal force with the other, one fixing one line as defining the encroachment, the other another and a different line.

In this state of things, to which one of these is the adjoining land-owner to conform? Under which will the overseer for the time being assert his right to remove boundary fences?

I perceive no ground for believing that the later reverses or overturns the earlier action.

Can they both stand? If so, one overseer can adhere to and enforce one direction, and his successor in office may, with equal authority, choose to execute the other. Or may the same officer use one return to determine the rights of owners on one side of the highway, and the other to determine the rights of adjoining owners on the other side.

Again, the question may be asked, With what frequency may these proceedings undergo repetition? How often may the adjoining land-owner be called upon to defend his right to maintain his enclosures? These two proceedings in point of time are separated by less than half a year. If they may be so frequent as that, why not oftener, at the whim and pleasure of the overseer of the highways? If one proceeding does not conclude further action, the possible number is illimitable.

I think every consideration of justice and convenience to the land-owner, looked at in the light of public interest as well, requires that such proceedings, when once taken, shall, until set aside, be, as to existing facts, a bar to subsequent investigation before a like statutory tribunal.

Under this view the determination under review cannot be sustained.

If we look into the facts in this case there is difficulty in maintaining the proceedings of this body.

The road attempted to be opened was laid out by the surveyors of the highways above fifty years ago. The map and return of the surveyors on file was the proper resort for guidance in establishing the public right. But to serve in this it was indispensable that a resurvey under it should have a

correct beginning. The beginning and ending were unmarked by any fixed monument, and, as I understand the evidence, none such was found existing anywhere in the entire line of the survey. In determining the starting point adopted by the justices and surveyors, their own engineer admits there was no certain or reliable guide, and he accepted one not on his own judgment, for he could form none from the *data* given in the return but that which the judges directed as seeming to them to be the best under the circumstances. From that the road lines were run towards the west, giving a width of two rods. At the beginning of the first course the south line of the survey lapped the prosecutor's enclosure eight and a half feet, and left about ten feet of the road as it was used by the public outside of the north line as run; and throughout this first course of about one-fourth of a mile, the lap on prosecutor's possession widened from eight and a half feet at the beginning to about twenty-five feet near the end of that course. North of the north line a strip of the used road was left, varying in width from ten feet at the beginning to over twenty-five feet near to the end. At the end of the third course the survey entirely left the old road and passed on the land of the prosecutor. The fourth course was separated from the south line of the old road by a narrow gore of lands within the prosecutor's enclosure. This road had been used by the public for half a century since it was laid by the surveyors. Many respectable and intelligent gentlemen from the neighborhood were sworn as witnesses in the case who had known and used the road for many years; some from the time it was originally laid out, and when interrogated on the subject, none had observed any material change in the road boundaries during the period of its use by the public, certainly none so marked as this survey, if correct, necessarily assumes.

These indications of error are too pointed and forcible to permit the belief that justice has been done in this procedure. The case seems to present that condition of uncertainty touching the persons who have encroached upon the road which

the statute requires to be resolved by equal widening on each side of the road as it has been used.

The statute does not confer upon this body the right to take lands in the alteration or laying of roads. Lands for such purpose can only be taken by the public upon compensation made to the owner.

For the reasons given, the proceedings should be set aside, with costs.